United States District Court
Southern District of Texas
**ENTERED**
April 28, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ERNESTO GOMEZ MARTINEZ        §
                             §
                             §        CIVIL ACTION NO. 7:15-CV-35
VS.                          §
                             §        CRIM. ACTION NO. 7:13-CR-101-1
UNITED STATES OF AMERICA     §

## REPORT AND RECOMMENDATION

Movant Ernesto Gomez Martinez, a federal prisoner proceeding pro se, initiated this action pursuant to 28 U.S.C. § 2255 by filing a Motion to Vacate, Set Aside, or Correct Sentence.  (Docket No. 1.)[1]  Movant was sentenced to 41 months' imprisonment after pleading guilty to illegal reentry in violation of 8 U.S.C. § 1326.  His sentence took into account his prior felony conviction for drug trafficking.  Movant's primary claims are that the District Court failed to consider all of the 18 U.S.C. § 3553(a) factors when sentencing him and misapplied the Sentencing Guidelines.  (Docket No. 1, at 1-2.)  Movant also implies that he should have received a downward departure at sentencing based on his status as a deportable alien.  (*Id.* at 2.) Respondent United States filed a response in which it "requests that this Court deny the motion . . . because the record conclusively shows that no relief is appropriate."  (Docket No. 6.)

After carefully considering Movant's § 2255 motion, the record of Movant's criminal case, and the applicable law, the undersigned concludes that his claims should be denied.  As discussed below, this action should be dismissed because Movant has failed to comply with a Court order.  In any event, Movant's claims alleging that the Court erred at sentencing are procedurally barred, not cognizable, and/or otherwise lack merit.  To the extent Movant intended to assert an equal protection claim, his constitutional rights were not violated in connection with

---

[1] Docket entry references are to the civil action, unless otherwise noted.

his sentencing.  Accordingly, it is recommended that the District Court deny Movant's § 2255 motion and dismiss this action.

## I.  BACKGROUND

**A.    The Underlying Criminal Charge[2]**

On December 26, 2012, Customs and Border Protection (CBP) agents encountered Movant near Donna, Texas.  Movant stated that he was a citizen of Venezuela with no legal right to be in the United States.  Movant stated that earlier the same day, he illegally entered the United States from Mexico by wading across the Rio Grande River near Donna, Texas.  It was later determined that Movant had lied about his citizenship to the CBP agents that encountered him and that he was in fact a citizen of the Dominican Republic.

A criminal records check revealed Movant's prior 2004 felony conviction for drug trafficking.  Notably, Movant "had a firearm on or about his person or under his control while committing the offense."  (Cr. Docket No. 14, ¶ 26.)  An immigration records check showed that Movant was previously deported from the United States to the Dominican Republic on April 22, 2009.

**B.    Criminal Proceedings**

On January 9, 2013, a single-count indictment was filed in the Southern District of Texas, McAllen Division, charging Movant with being found illegally in the United States after previously being deported in violation of 8 U.S.C. § 1326(a) & (b).  Movant later pleaded guilty to the indictment.  After accepting Movant's guilty plea, the District Court ordered the Probation Office to prepare a Presentence Investigation Report (PSR).

---

[2]  The facts in the next two sections are drawn principally from Movant's Presentence Investigation Report (PSR).  (Cr. Docket No. 14.)

The PSR calculated Movant's base offense level at 8, which was enhanced 16 levels due to Movant's 2009 deportation following his felony drug trafficking conviction.[3]  This gave Movant an adjusted offense level of 24.  Movant was granted a two-level decrease for acceptance of responsibility, bringing his total offense level to 22.  The PSR calculated his criminal history at level II,[4] which resulted in a guidelines imprisonment range of 46 to 57 months.

Movant's counsel filed objections to the PSR.  (*See* Cr. Docket No. 13.)  Counsel argued primarily that the Court should depart downward given that the 16-level enhancement "over represents the seriousness of [Movant's] actual criminal conduct."  (*Id.* at 1.)  In addition, counsel requested that Movant be granted an additional point reduction for acceptance of responsibility.  (*Id.* at 2.)

At the sentencing hearing both Movant and his attorney confirmed that they reviewed the PSR together.  (Cr. Docket No. 27, Sentencing Tr. 2-3.)  Movant's counsel then renewed her objection to the PSR.  (*Id.* at 4-6.)  Movant's counsel argued that Movant's sentence should be reduced because his criminal history was overrepresented, given that "the actual amount that was involved in [the drug trafficking] case just seems so much less than what we normally see in huge drug trafficking cases."  (*Id.* at 4.)  Despite counsel's arguments, the Court overruled the objection.  However, on the Government's motion, the Court granted Movant a third point reduction for accepting responsibility.  (*Id.* at 3.)  With the full credit reduction for acceptance of

---

[3]  The PSR found that Movant's conviction for the offense of "drug trafficking (firearm specification)" was a felony drug trafficking offense that warranted a 16-level enhancement. U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1).

[4]  The PSR calculated Movant's criminal history points at 3, which put Movant in criminal history category II.  All of Movant's criminal history points stemmed from his 2004 conviction for drug trafficking (firearm specification).  Movant had other minor criminal history that did not result in any criminal history points.  (*See* Cr. Docket No. 14, ¶¶ 22-25.)

responsibility (three points total), Movant's Sentencing Guidelines range was reduced to 41 to 51 months imprisonment.  (*Id.*)

Movant was given an opportunity to address the Court, and he apologized for his actions and also attempted to explain his behavior.  (*Id.* at 7-8.)  The Court highlighted Movant's criminal history and pointed out that Movant "possessed a weapon and . . . the combination of drugs and weapons is a very dangerous combination."  (*Id.* at 10-11.)

After carefully considering all of this, the District Court declined to further reduce Movant's Guidelines range.  Ultimately, the Court sentenced Movant to 41 months' imprisonment, which was the lowest sentence in the applicable Guidelines range.  (*Id*. at 11.)

Movant filed an appeal to the Fifth Circuit Court of Appeals.  *United States v. Gomez-Martinez*, 566 F. App'x 308 (5th Cir. 2014).  On appeal, Movant argued that "the distrtict court plainly erred by enhancing his sentence based on a finding that his 2004 conviction under Ohio Revised Code § 2925.03(A)(2) was a felony drug trafficking offense under U.S.S.G. § 2L1.2(b)(1)(A)(i)."  *Id.* at 309.  Finding no plain error, the Fifth Circuit dismissed Movant's appeal.  *Id.*  Movant later timely filed the pending § 2255 motion.  (Docket No. 1.)

### C.   Movant's Allegations and the Government's Response

As noted, Movant's primary claims are that the District Court failed to consider all of the 18 U.S.C. § 3553(a) factors when sentencing him and misapplied the Sentencing Guidelines.[5] (Docket No. 1, at 1-2.)  Specifically, Movant argues that the Court misapplied the Guidelines when Movant did not receive a two-point downward departure for accepting a final deportation order.  (*Id.* at 1.)  Movant also argues that "a downward departure from a recommended range

---

[5] Movant's initial § 2255 motion to vacate is almost identical to other § 2255 motions that have been filed in the McAllen Division of the Southern District of Texas.  (*See, e.g., Martinez-Reyes v. United States*, 7:14-CV-341 (Docket No. 1).)

may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his confinement," and that his alien status "creates an unwarranted disparity in the sentence imposed." (*Id.* at 1-2.) Because Movant's pleading failed to follow the standard § 2255 form, the undersigned entered an order directing him to amend his pleadings. (Docket No. 2.) Movant failed to respond to this order.

Respondent United States' primary argument is that Movant's claim regarding the "two-level reduction" is procedurally defaulted because he "failed to raise this issue on direct appeal." (Docket No. 6, at 8.) Respondent also argues that Movant's claim regarding the District Court's supposed error at sentencing is not cognizable in a § 2255 motion to vacate. (*Id.* at 9.) Movant's claims will be addressed in the context of the standard of review for § 2255 actions.

## II.  ANALYSIS

### A.  28 U.S.C. § 2255

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the plain error standard that would apply on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). "Following a conviction and exhaustion or waiver of direct appeal, [courts] presume a defendant stands fairly and finally convicted." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991)). "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Cervantes*, 132 F.3d at 1109. Stated another way, relief under § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955

5

F.2d 367, 368 (5th Cir. 1992).  Subject to these constraints, there are only four limited grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues; (2) challenges to the District Court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

**B.    Failure to Prosecute**

Movant failed to use the standard form in filing his § 2255 motion.  As such, the undersigned entered an order alerting Movant to the deficiencies in his pleading.  (Docket No. 2.) Movant was directed to "amend his original pleading to comply with Rule 2 of the Rules Governing § 2255 Proceedings." (*Id.* at 1 (emphasis in original).)  Movant failed to comply with the order or otherwise respond to it.[6]

Movant's claims are subject to dismissal for failure to prosecute.  Rule 41(b) provides that an action may be involuntarily dismissed where a party "fails to prosecute or to comply with these rules or a court order."  FED. R. CIV. P. 41(b).  Such a dismissal may be made upon motion by the opposing party or on the court's own motion.  *See McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988).  While a court should be "appropriately lenient" with a party who is proceeding pro se, the "'right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)).

---

[6]  This order was returned as undeliverable, suggesting that Movant had failed to comply with the requirement that he keep the Clerk informed of his current address.  (Docket No. 3.)  About a month later, Movant submitted a notice of change of address.  (Docket No. 4.)  The Clerk's office subsequently re-sent the undersigned's order (along with a copy of the 2255 form) to the new address provided by Movant.  (*See* unnumbered docket entry dated November 19, 2015.) However, Movant still did not comply with the order.

Here, Movant failed to comply with the Court's order that he "amend his original pleading to comply with Rule 2 of the Rules Governing § 2255 Proceedings." (Docket No. 2, at 1 (emphasis in original).)  Movant has failed to take any action in this case, other than filing his initial incomplete § 2255 motion.  Movant's pleadings are deficient, and this action is subject to dismissal because he failed to comply with the Court's order to correct the deficiency.  *See Hulsey*, 929 F.2d at 171.

Because Movant did not comply with the Court's order to file an amended § 2255 motion (using the standard § 2255 form), this case should be dismissed for failure to prosecute.  No less drastic sanction is available here, given Movant's failure to pursue this case.   In any event, Movant's claims are clearly meritless, if not frivolous, as discussed below.

## C. Sentencing Error Claims

Liberally construed, Movant appears to argue that the District Court erred in two ways in calculating his sentence.   These claims are subject to dismissal both because they are procedurally barred and because they are not cognizable.

Where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings.  *See United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001); *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).  A district court may consider a defaulted claim only if the petitioner can demonstrate either: (1) cause for his default and actual prejudice; or (2) that he is actually innocent of the crime charged. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999).  Movant did file a direct appeal; however, he failed to challenge the District Court's alleged errors at sentencing.  Nor has Movant made a showing of cause and prejudice to

overcome his default.  As such, his claims are procedurally barred and should not be considered in this § 2255 action.

In addition to the procedural bar, Movant's contention that the District Court misapplied the Sentencing Guidelines or otherwise erred in calculating his sentence is not cognizable under § 2255.  As the Fifth Circuit has long held, "[a] district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255." *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994).  *See also United States v. Payne*, 99 F.3d 1273, 1281–82 (5th Cir. 1996) ("A district court's technical application of the Guidelines does not give rise to a constitutional issue.") (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)); *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (misapplication of the sentencing guidelines is not a cognizable claim in a § 2255 motion).  In other words, a claim that the District Court erred in calculating Movant's sentence cannot be raised or considered in this § 2255 action.  Such a claim does not fall within one of the four narrow categories that are cognizable in a motion pursuant to § 2255.  *See* 28 U.S.C. § 2255(a); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).  Thus, to the extent that Movant intended to assert such a claim, the Court could not consider it.

Apart from being procedurally barred and not cognizable, Movant's sentencing claims also lack merit.

1.   Failure to Consider the § 3553(a) Factors

Movant claims that the District Court erred at sentencing when it "failed to consider all 18 U.S.C. § 3553(a) factors as required by applicable law."  (Docket No. 1, at 2.)  This claim is refuted by the record.

The Court applied the § 3553(a) factors in determining Movant's sentence.  For example, in considering the nature and circumstances of Movant's history, the Court pointed out that not only was he convicted of a prior drug trafficking offense, but also that he "possessed a weapon" and that "the combination of drugs and weapons is a very dangerous combination" (Cr. Docket No. 27, Sentencing Tr. 11).  S*ee* 18 U.S.C. § 3553(a)(1).[7]  The Court also mentioned that Movant's actions "raise concerns with not just this Court but with our community as a whole" (Cr. Docket No. 27, Sentencing Tr. 11).  S*ee* 18 U.S.C. § 3553(a)(2)(C).  In addition, the Court noted that based on the circumstances, "a sentence within the guideline range [was] warranted in this case" (Cr. Docket No. 27, Sentencing Tr. 11).  S*ee* 18 U.S.C. § 3553(a)(2)(A) & (a)(3).  As is reflected by the record, the Court clearly considered the § 3553(a) factors in determining Movant's sentence.

In any event, if "a sentencing court [ ] exercise[s] its discretion to impose a sentence within a properly calculated Guidelines range," upon review it will be inferred "that the judge

---

[7] The § 3553(a) factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed ... medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
> (5) any pertinent policy statement ...;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct....

18 U.S.C. § 3553(a).

has considered all the factors for a fair sentence . . . and it will be rare for a reviewing court to say such a sentence is 'unreasonable.'" *United States v. Smith*, 440 F.3d 704, 706-07 (5th Cir. 2006) (quoting *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005)).   Furthermore, "[w]hen the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required." *Mares*, 402 F.3d at 519. That is precisely what occurred here when the Court informed Movant that it "believes that a sentence within the guideline range is warranted in this case."  (Cr. Docket No. 27, Sentencing Tr. 11.)

Simply put, Movant's claim that the Court failed to consider the § 3553(a) factors in sentencing him to a generous 41-month sentence is meritless.

### 2.   Downward Departure for Accepting a Final Deportation Order

Next, Movant claims that "the Attorney General can offer up to two (2) points downward departure if defendant accepts a final deportation order," and that because he did not receive this downward departure, the "sentence imposed . . . is a result of the incorrect application of the guidelines."  (Docket No. 1, at 1.)  As Respondent points out in its briefing, this claim also lacks merit.

Although the basis for Movant's claim is unclear, the "Attorney General's April 28, 1995, memorandum ("1995 Memo") allowed his attorney to seek a down departure in return for [Movant] conceding deportability." *Ramirez-Guzman v. United States*, No. EP-12-CV-198, 2013 WL 5406664, at *3 (W.D. Tex. Sept. 25, 2013).   However, "'the basis for the policy [announced in the 1995 memo] was severely undermined by Congress in 1996 when it amended the Immigration and Nationality Act to provide for administrative reinstatement of prior deportation, exclusion and removal orders.'" *Id.* (quoting *United States v. Estrada–Chavez*, No.

3:12-CV-7217, 2012 WL 5178182, at *4 (E.D. Ky. Oct. 18, 2012)).   "Further, the *Estrada–Chavez* court points out that a subsequent memorandum issued by the Attorney General in 1999 explains how the IIRAIRA [Illegal Immigration Reform and Immigrant Responsibility Act] significantly reduced the benefit to the government from an alien's stipulation to removal from the United States, and rendered the 1995 Memo ineffective."   *Ramirez-Guzman*, 2013 WL 5406664, at *4 (citing *Estrada–Chavez*, 2012 WL 5178182, at *4-5.

Courts have agreed that "the IIRAIRA and the subsequent Attorney General 1999 memorandum modified the 1995 Memo, such that federal prosecutors are no longer authorized to recommend downward departure requests based upon a defendant's stipulation to removal, absent a showing of special circumstances."   *See Ramirez-Guzman*, 2013 WL 5406664, at *4 (citing *Estrada–Chavez*, 2012 WL 5178182, at *4-5).   In addition, "other federal courts of appeal agree that absent some showing that a case is 'unusual or atypical,' a defendant's conceding to deportation is not a proper basis for a departure."   *Ramirez-Guzman*, 2013 WL 5406664, at *4 (citing, *e.g.*, *United States v. Clase-Espinal*, 115 F.3d 1054, 1056 (1st Cir. 1997), *United States v. Galvez-Falconi*, 174 F.3d 255, 260 (2d Cir. 1999), *United States v. Mignott*, 184 F.3d 1288, 1291 (11th Cir. 1999)).

Here, Movant has made no showing of the "special circumstances" that are required to receive a downward departure based on his stipulation to a deportation.   As such, this sentencing claim lacks merit and should be rejected.

3.   <u>Deportable Alien Downward Departure</u>

Movant also argues that "a downward departure from a recommended range may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous

increase in the severity of his confinement."[8]   (Docket No. 1, at 1-2.)  Here again, Movant's claim is baseless.

The Sentencing Guidelines provide that a downward departure on the ground that the defendant is a deportable alien, while generally permissible, would be proper only in the extraordinary case, and such cases are considered "highly infrequent."  *See United States v. Garay*, 235 F.3d 230, 232–33 & n.8 (5th Cir. 2000).   Moreover, in cases involving an immigration offense a defendant's alienage has been adequately taken into consideration and thus is not a permissible basis for downward departure.  *Garay*, 235 F.3d at 233–34 (defendant's "status as deportable alien, as an inherent element of his crime, has already been considered by the [Sentencing] Commission in formulating the applicable guidelines"); *see also United States v. Maldonado*, 242 F.3d 1, 4–5 (1st Cir. 2001) ("a deportable alien who commits a crime is still within the 'heartland' of the guidelines"; "the common facts of a long sentence and likely deportation" do not by themselves make a case extraordinary such as to warrant a downward departure).

Here, Movant was convicted of an immigration offense (violating 8 U.S.C. § 1326 by re-entering the United States after a previous deportation).  As such, a downward departure based on his alienage would have been inappropriate.  *Garay*, 235 F.3d at 233–34.  Beyond that, Movant has identified nothing "extraordinary" about his situation that would justify a "highly infrequent" guideline departure based on alienage.[9]  To the contrary, Movant's circumstances are typical of many defendants convicted of illegal re-entry after a previous deportation in the

---

[8] Liberally construing his motion, Movant may also be asserting an equal protection claim here. To the extent that is the case, it will be addressed in Part II.D of this report.

[9] In addition, Movant was sentenced under advisory sentencing guidelines.  In determining Movant's sentence, the District Court could, and did, consider Movant's history and characteristics, including his alienage.  *See* 18 U.S.C. § 3553(a).

McAllen Division of the Southern District of Texas and elsewhere in federal courts.[10]  *See*

*United States v. Martinez-Hernandez*, 359 F. App'x 448, 449 (5th Cir. 2009) (affirming district

court's refusal to grant a downward departure even though the "benign motive" of the illegal

reentry was "to try to earn money to help his father pay for cancer treatments").

Accordingly, Movant's suggestion that he should have received a downward departure

based on his status as a deportable alien should be denied.

## D.      Equal Protection Claim

In addition to the claims Movant specifically identified as grounds for relief, he makes

reference to being treated differently compared to a U.S. citizen.  Movant states that because of

his "status as a deportable alien," he would not be eligible to serve any time of his sentence in a

"halfway house, [he will be] placed in higher security camps without access to the same type and

scope of rehabilitative tools, courses and programs available to citizen prisoners."  (Docket No.

1, at 2.)  According to Movant, this "creates an unwarranted disparity in the sentence imposed."

(*Id.*)  Construing his pleading liberally, Movant may intend to argue that the District Court

violated his constitutional right to equal protection at sentencing by failing to grant him a

downward departure based on his status as a deportable alien.

---

[10] Movant apparently returned to the United States illegally to "work and he wanted to reunite
with his daughter that's ten years old and she resides here in Pennsylvania."  (Cr. Docket No. 27,
Sentencing Tr. 6.)  However, the Court already took that circumstance into account in imposing
Movant's sentence.  Movant's attorney argued on Movant's behalf at sentencing regarding his
reasons for illegally entering the United States.  Ultimately, after considering the objections of
counsel and the § 3553(a) factors, the Court did not rule in favor of Movant on this issue.  (*Id.* at
10-11.)

13

An equal protection claim might be cognizable under § 2255 to the extent that Movant is alleging a violation of his constitutional rights that occurred at sentencing.   However, such a claim lacks merit.[11]

Because the Bureau of Prison's classification of prisoners based on whether they are citizens or deportable aliens is not a suspect classification, a rational basis standard of review applies. *Carvajal*, 31 F. App'x 155, at *1 (citing *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998)).   Movant's equal protection claim "fails because he does not show that he is being treated differently than similarly situated persons."   *Perez-Martinez*, 235 F. App'x at 229 (citations omitted); *see also Carvajal*, 31 F. App'x 155, at *1 (rejecting equal protection claim because the "BOP's determination that INS detainees are ineligible to participate in [various community-based and drug treatment programs] is rationally related to the legitimate governmental interest of preventing such INS detainees from fleeing during the community-based portion" of the programs).   Furthermore, Movant does not allege that separating citizen and non-citizen inmates lacks a rational basis.  *See Barrios v. United States*, No. 5:09-cv-15, 2009 WL 3073931, at *7 (S.D. Tex. Sept. 21, 2009).

In addition, the Supreme Court has stated: "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).   In short, the

---

[11] Moreover, like his sentencing claims, Movant's equal protection claim is procedurally barred because he failed to raise it in his criminal proceedings.  *See United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001); *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).  Here again, he has failed to show cause for his default and actual prejudice.  "A defendant must meet this cause and actual prejudice test even when he alleges a fundamental constitutional error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (citing *Murray v. Carrier,* 477 U.S. 478, 493 (1986)).

District Court did not violate Movant's constitutional rights by failing to grant Movant a downward departure based on his status as a deportable alien.

### III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Movant's § 2255 Motion to Vacate (Docket No. 1) be DENIED and that this action be DISMISSED.  For the reasons discussed below, it is further recommended that Movant be denied a certificate of appealability.

### CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Movant has not yet filed a notice of appeal, the recently-amended § 2255 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, RULES GOVERNING SECTION 2255 PROCEEDINGS.  Because the undersigned recommends the dismissal of Movant's § 2255 action, it is necessary to address whether Movant is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of § 2255 proceedings).  An applicant may

also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329.  As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Movant's § 2255 claims should be dismissed on procedural grounds and on their merits.  For the reasons explained in this report, the undersigned believes that jurists of reason would not find it debatable whether the Movant's claims should be dismissed on procedural grounds.  Likewise, the undersigned believes that reasonable jurists would not find debatable or wrong the conclusion that Movant's claims alleging sentencing errors lack merit, nor are the claims he presents adequate to deserve encouragement to proceed further.  Accordingly, Movant is not entitled to a COA.

## <u>NOTICE TO THE PARTIES</u>

The Clerk shall send copies of this Report and Recommendation to Movant and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on April 26, 2017.

Peter E. Ormsby
United States Magistrate Judge